# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| COLONY CAPITAL LLC, derivatively on behalf of PSYBIO THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EVAN LEVINE, ROSS CARMEL, ROBERT NATHAN and CARMEL, MILAZZO & DICHIARA f/k/a CARMEL, MILAZZO & FEIL, <br><br> Defendants. | No. 20 cv 3885 <br> Judge Charles R. Norgle, Sr. |

## VERIFIED AMENDED COMPLAINT

Colony Capital LLC, derivatively on behalf of Psybio Therapeutics, Inc., by and through its attorneys, Howard L. Teplinsky, Katherine A. Grosh, and Roenan Patt of LEVIN GINSBURG states the following as its Verified Amended Complaint against Evan Levine, Ross Carmel, Robert Nathan and Carmel, Milazzo & Feil, LLP, f/k/a Carmel, Milazzo & DiChiara:

## ALLEGATIONS COMMON TO ALL COUNTS

1. This is an action to redress the systematic oppression and blatant breaches of fiduciary duty owed to a minority shareholder of a company that he founded by the company's other shareholders, officers and directors. Through a series of illegal and improper "meetings" held under cover of darkness and without Colony Capital LLC's knowledge or consent, the Defendants improperly diluted or eliminated Colony Capital LLC's substantial equity interest in Psybio Therapeutics, Inc., allegedly terminated its member and manager, Richard Corbin's

("Corbin") employment as Chief Financial Officer, and attempted to strip Corbin of his status as a director. Defendants' conduct, including the filing of a frivolous lawsuit unsuccessfully seeking prior restraint of Corbin's speech and other temporary and preliminary injunctive relief, and placing the company's most important contract in jeopardy, has caused substantial injury to Psybio Therapeutics, Inc. Defendants' conduct was motivated by self-dealing and was not related to any legitimate business purpose.

## THE PARTIES

2. Plaintiff Colony Capital LLC is a citizen of the State of Illinois, as all of its members are individuals who reside and are domiciled in the State of Illinois.

3. Defendant Ross Carmel is a citizen of the State of New York. On information and belief, he resides and is domiciled in the State of New York.

4. Defendant Robert Nathan is a citizen of the State of New York. On information and belief, he resides and is domiciled in the State of New York.

5. Defendant Carmel, Milazzo & Feil LLP, f/k/a Carmel, Milazzo & DiChiara ("CMD") is a partnership. Each of its partners, Ross Carmel, Chris Milazzo, Timothy Feil and Peter DiChiara are citizens of the State of New York and they reside and are domiciled in the State of New York.

6. Defendant Evan Levine is a citizen of the State of California. Levine resides in and is domiciled in the State of California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. 1332 in that Plaintiff and Defendants are citizens of different states and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

9. Plaintiff Colony Capital LLC is the owner of approximately one-third of the issued shares of PsyBio Therapeutics, Inc. ("PsyBio"), a Delaware corporation. Corbin is a manager and member of Colony Capital LLC, and was the sole incorporator of PsyBio. At all relevant times, Corbin was and is a director and an officer of PsyBio.

10. PsyBio is in the business of supporting the research and development of medical uses for psilocybin to treat emotional and mental conditions. Corbin became involved in the industry in or about February of 2019 when Defendant Evan Levine ("Levine"), Corbin's then-former business associate, asked Corbin if he was interested in locating assets through which they could develop a company. Corbin was charged with locating individuals and universities that were conducting research in the medical uses of psilocybin and evaluating whether the researchers would be a good fit through which to develop the business.

11. In September of 2019, Corbin identified and contacted Professor Andrew Jones at the Miami University in Oxford, Ohio ("Miami University") to determine whether research that he was performing on the health effects of psilocybin would a be a good platform for PsyBio's business.

12. Along with Levine, on November 21, 2019, Corbin went to Oxford, Ohio and personally met with Professor Jones to discuss a possible role for both the university and for him personally. Levine and Corbin again visited Miami University and Professor Jones on December 18 and December 19, 2019. The purpose of their meeting was to discuss entering into a venture together which would include the funding of Professor Jones's research.

13. Although PsyBio had yet to take steps to incorporate, on January 15, 2020, the law firm of Carmel, Milazzo & Dichiara ("CMD"), through its partner Ross Carmel ("Carmel"), entered into a "Retainer for Legal Representation" agreement. CMD agreed to represent PsyBio in connection with the formation and structure of the company, drafting employment agreements for Levine and Corbin, reviewing a license agreement between PsyBio and Miami University, preparation of the offering materials for PsyBio's first two rounds of financing, and all general corporate matters through the second round of financing. In exchange, CMD, through Mr. Carmel, received 4% of the company's common stock. A true and correct copy of the Retainer Agreement is attached hereto as Exhibit A.

14. Following PsyBio's retention of CMD in exchange for 4% of the company's stock, Corbin incorporated PsyBio on January 21, 2020 by filing a Certificate of Incorporation with the Delaware Secretary of State. Thereafter, on January 31, 2020, as sole incorporator of PsyBio, Corbin adopted a resolution appointing Levine, attorney Ross Carmel and himself as initial directors. A true and correct copy of the 1/31/20 Action by Written Consent of the Sole Incorporator of PsyBio Therapeutics, Inc. is attached hereto as Exhibit B.

15. On February 7, 2020, Levine, Carmel and Corbin, as the members of the Board of Directors, elected the company's officers. Levine was elected Chief Executive Officer and President. Corbin was elected Treasurer/Chief Financial Officer and Secretary. Also on that day, the company authorized the issuance of 60,000,000 shares of stock with a par value $0.001 per share. The initial shareholders were: a) Levance Prospects LLC, a company controlled by Levine, holding 10,000,000 shares, and b) Robert S. Nathan holding 10,000,000 shares. Additionally, 10,000,000 shares were issued to Colony Capital LLC, a company that Corbin controls and, consistent with the Retainer Agreement, 1,200,000 shares were issued to the

company's attorneys, CMD. On February 7, 2020, the company also adopted and ratified its Bylaws. A true and correct copy of the Action by Unanimous Written Consent with Bylaws attached is attached hereto as Exhibit C.

16. CMD did not draft employment agreements for Corbin or Levine, if at all, until sometime after May 6, 2020.

### The Letter of Intent with Miami University

17. Negotiations with Miami University and Professor Jones culminated in a signed Letter of Intent dated February 24, 2020. A true and correct copy of the Letter of Intent is attached hereto as Exhibit D.

18. The purpose of the non-binding Letter of Intent was to "summarize the essential terms and conditions under which" Miami University Professor Jones and PsyBio intended to work together to advance and expand the university's research. The Letter of Intent contemplated that the parties would enter into a sponsored research agreement and exclusive license agreement to license the provisional patent application for the Methods of Production of Psilocybin and all intellectual property developed in the pursuit. The Letter of Intent contemplated that Professor Jones would receive 13% of PsyBio's stock, as well as an annual research fee and a fee for serving as Chairman of PsyBio's "Scientific Advisory Board." The letter of Intent also contemplated that Miami University and Professor Jones would split 50% of the company's net revenues (4% of sales) representing the royalties the University shared with Dr. Jones. Corbin believed that under the agreement that he helped negotiate, the company, the university and Professor Jones would benefit.

### The Company Seeks Investors

19. On or about April 27, 2020, Levine sent to Corbin a draft letter outlining the

5

terms under which Grandhill Capital, Inc., a private equity firm based in Toronto, Canada, would become an investor in PsyBio.

20. When Corbin received the draft term sheet, he was very upset and believed that if the company entered into a deal with Grandhill Capital, it would be at great risk of breaching its agreements with Miami University.

21. The deal that Levine was negotiating with Grandhill Capital involved the following:

   a. Grandhill would cause PsyBio to acquire a publicly traded "shell" corporation in order to take PsyBio public without having to comply with the requirements of an IPO;

   b. Grandhill would loan $500,000 to PsyBio, the proceeds of which would be held in escrow by CMD;

   c. The "shell" company created by Grandhill would effectively receive 12.5% of PsyBio's shares;

   d. Grandhill would attempt to raise additional equity in the amount of $1.4 million;

   e. Grandhill would have the right to replace Corbin as CFO with a Vice President of Finance, all paid for by PsyBio;

   f. PsyBio would be required to pay Grandhill monthly rent for an office location in Canada despite the fact that it was operating out of the United States;

   g. PsyBio would be required to issue to Grandhill 10% of the PsyBio's equity, or approximately 4,644,444 shares of common stock, for "nominal consideration"; and

   h. For the opportunity to borrow money from Grandhill, replace Corbin as CFO, pay a new CFO, pay rent for space it did not need, and give up 32.5% of the company, PsyBio would pay Grandhill an additional $5,000 per month for one year.

22. The proposed deal with Grandhill would have materially and detrimentally affected PsyBio's finances. For the $500,000 loan it was proposing to make to PsyBio,

6

Grandhill would receive nearly one-third of the company's stock through the acquisition of "extra shares" and "advisory shares" -- an amount that was multiple times the value of Grandhill's actual investment.

23. Entering into the deal with Grandhill would likely have put PsyBio's ability to live up to its commitments to the Miami University in jeopardy. Corbin's belief was that under the Grandhill deal, there would not be sufficient cash to fund Miami University's research efforts, despite PsyBio's commitments to the contrary.

Corbin Objects to the Grandhill Deal

24. On or about April 27, 2020, as was his right to do as an officer, director and shareholder (through Colony Capital LLC), Corbin voiced his strong objection to Levine regarding the contemplated transaction with Grandhill. In addition, Grandhill's eventual takeover of PsyBio, including Corbin's immediate replacement as CFO, caused him concern because none of PsyBio's employees and officers had employment agreements with PsyBio. Accordingly, on April 27, 2020, Corbin sent an email to Evan Levine stating, "we need employment agreements too before any deal. Even with no cash, something to secure long term scenarios." Corbin was proposing that each of the officers and employees, including Levine and Nathan, receive an employment agreement before finalizing any deal with Grandhill. A true and correct copy of Corbin's April 27, 2020 email to Levine is attached hereto as Exhibit E.

The Proposed Employment Agreement

25. On April 27, 2020, Corbin sent Levine an email advising Levine that "we all" needed employment contracts prior to engaging in the Grandhill deal. Because Carmel and his law firm had failed to draft employment agreements, Corbin drafted and proposed an employment agreement for consideration and emailed it to Levine on April 30, 2020. The draft

7

employment agreement proposed, in pertinent part, that: (a) Corbin's salary would be 80% of Levine's; (b) either party could terminate the agreement upon 30 days written notice; and (c) in the event of termination, Corbin would be entitled to a severance payment of $100,000. A true and correct copy of the draft employment agreement is attached hereto as Exhibit F.

26. Based upon the proposed transaction with Grandhill, there was a likelihood that PsyBio would not be able to keep its commitments to Miami University, and the shareholders' equity in PsyBio would be substantially diluted and Corbin would be replaced as an officer, all in exchange for the privilege of borrowing $500,000 from Grandhill. A true and correct copy of Grandhill's executed term sheet dated April 30, 2020 is attached hereto as Exhibit G.

27. Corbin communicated his objections to the Grandhill deal to Levine. In apparent response, on April 30, 2020, Corbin received a telephone call from Levine telling him for the first time that "Rob Nathan and Ross Carmel" were "not happy with [Corbin's] equity percentage" and that Corbin's equity in PsyBio needed to be reduced and diluted. Corbin objected to Levine's suggestion that he reduce his ownership, explaining to Levine that he had co-founded the company and had found and originated the deal with Miami University. Corbin further told Levine that that because he had been working on the project since February of 2019, he would not agree to reduce his ownership in PsyBio.

PsyBio's Purported Dissolution

28. In response, on or about May 1, 2020, Levine sent Corbin an email advising that Levine was going to seek PsyBio's dissolution. Corbin believed that Levine's stated intention of dissolving the company was merely intended to misappropriate PsyBio's assets, destroy the value of PsyBio and, instead, convey them to a new company—a company in which Corbin did not have any ownership interest.

29. That same day, May 1, 2020, due to the suspicious nature Levine's representation regarding PsyBio's dissolution, Corbin performed a Delaware LLC search using the term "PSYBIO." The search revealed that a newly-formed entity, "PsyBio Life Sciences," had been incorporated. The incorporation of PsyBio Life Sciences demonstrated to Corbin that Levine and Carmel were no longer acting on behalf of the interests of PsyBio and Miami University, but rather, were acting in their own self-interests.

30. On May 1, 2020, in furtherance of PsyBio's business and as part of his responsibilities as an officer and director, Corbin contacted Professor Jones to advise him that PsyBio was about to enter into a transaction with a private equity firm that caused him substantial concern over PsyBio's ability to fund Professor Jones's research efforts and that PsyBio's directors were meeting to discuss the company's possible dissolution.

The May 4, 2020 Meeting of the Board of Directors

31. As a direct result of Corbin: a) expressing his concern with the Grandhill transaction; and b) contacting Professor Jones, on May 1, 2020, Levine sent Corbin an email on May 1, 2020, on which Carmel was copied, directing Corbin to "be available for a meeting of the Board of Directors of PsyBio Therapeutics Inc." on Monday, May 4, 2020 at 3:30 p.m. EST where the directors would be voting on "the dissolution of PsyBio Therapeutics Inc. and any other item that a Director chooses to discuss." A true and correct copy of the May 1, 2020 email is attached hereto as Exhibit H.

32. A telephonic meeting of the Board of Directors was held on May 4, 2020 where, despite Corbin's dissent and without any stated business purpose, Levine and Carmel, two of the three directors, voted to dissolve PsyBio. During the meeting, Carmel, the company's attorney, director and fellow shareholder, told Corbin that unless he agreed to reduce his equity, he "could

9

have a little of something valuable or nothing," meaning that unless Corbin voluntarily agreed to substantially reduce his equity in PsyBio, the remaining directors and shareholders would ensure that the company's value was reduced to zero. Corbin reiterated his position that he would not reduce his equity in the company. Thereafter, consistent with Carmel's threat, Levine immediately called a vote of directors to dissolve the company, which passed 2-1.

33. Soon thereafter, Corbin sent a request to Carmel for a full copy of the minutes reflecting the Board of Director's decision to dissolve the Company. Carmel refused to tender the minutes. Thereafter, in his role as secretary of PsyBio, Corbin sent an email to Ross Carmel with proposed minutes reflecting the actions voted on at the director's meeting.

34. Carmel, the corporate attorney, partner of a shareholder and fellow board member, responded to Corbin's email, accusing him of changing "the [email] passwords for PsyBio officers and advisers" and threatening Corbin that his conduct constituted tortious interference "as well as a multitude of derivative claims." Furthermore, Carmel's communications with Corbin demonstrated to Corbin that not only was Carmel no longer acting in the best interest in PsyBio as a board member or as its counsel, but was acting in his and his law firm's self-interests. A true and correct copy of the May 4, 2020 email exchange is attached hereto as Exhibit I.

35. In response to Carmel's accusations, also on May 4, 2020, Corbin advised Carmel that he had not been told that anyone was having difficulty accessing the dissolved company's email, but that he would reset people's passwords if needed. Carmel did not respond to Corbin's offer to reset the passwords. Instead, attorney Carmel responded by stating, "Once again, you are completely lost. You forced yourself out by providing no value and refusing to work. Please keep all emails and the meta data will evidence your wrongful acts and numerous privacy

10

violations."

36. Despite Carmel's threatening tone and language, Corbin again told Carmel that he needed to know which parties required a password reset so that he could perform a password reset. Specifically, Corbin reminded Carmel that he had failed "to state which parties need a password reset." Carmel's response was again to ignore Corbin's request that he identify those people who could not access their emails so he could reset their passwords. Instead, Carmel again warned Corbin of "spoliation," advising him that "there are serious consequences" for doing so. Instead of providing Corbin with the information so he could make sure that all affected persons could access their emails, Mr. Carmel continued his threats.

37. On May 6, 2020, Levine and Carmel both advised Corbin that the May 4, 2020 dissolution vote was "not effective" because, according to them, the directors could not vote to dissolve the company. Thus, based upon Levine and Carmel's communications with Corbin on May 6, 2020, the May 4, 2020 board meeting to vote on "The dissolution of PsyBio Therapeutics" was by all appearances a calculated ruse by the other board members and the corporate attorney to force Corbin to accept their terms and reduce his equity.

38. Also on May 6, 2020, with no prior notice to Corbin, Levin, Nathan and Carmel executed shareholder written consents purporting to remove Corbin as a board member (collectively, "May 6 Written Consents"). True and correct copies of the May 6 Written Consents are attached hereto as Exhibit J. Also on May 6, 2020, Levine sent Corbin a letter supposedly terminating him from his corporate officer positions. A true and correct copy of the Termination Letter is attached hereto as Exhibit K.

39. As more fully set forth in Corbin's Counterclaims *in Psybio Therapeutics, Inc. v. Richard Corbin*, No. 20-cv-3340 (N.D. Ill. 2020), the allegations of which are incorporated

11

herein by reference, Corbin's removal as a board member and termination as an officer was done contrary to the bylaws and the DCGL and done without proper notice. Further, prior to May 6, 2020, Corbin was never told by anyone that his job performance was not acceptable or that he had not been doing his job. Rather, Corbin was being eliminated from PsyBio to expand the other equity positions of the other board members because Corbin would not agree to voluntarily dilute his ownership of PsyBio, and because of his legitimate concerns regarding and opposition to the Grandhill deal.

### The May 21, 2020 Meeting of Officers

40. On May 21, 2020 at 3:04 p.m., because Corbin was still an officer of PsyBio, Corbin called an emergency meeting of PsyBio's officers for 9:00 p.m. CST. A true and correct copy of the Notice for the May 21, 2020 meeting is attached hereto as Exhibit L. The purpose of the meeting, as stated in the notice, was to discuss Levine's potential removal as an officer and various other items of business including the termination of PsyBio's Retainer Agreement with CMD.

41. At 9:00 p.m. on May 21, 2020, Corbin called in to the conference line and no one else appeared at the meeting. During the May 21, 2020 officers' meeting, because the previous actions that Carmel and Levine had taken in attempting to dissolve the company, terminate his officer positions, and remove him as a director were not proper, Corbin terminated Levine as President, CEO and Chairman. CMD was also terminated as PsyBio's counsel.

## COUNT I

**(Breach of Fiduciary Duty on Behalf of PsyBio, Derivatively, Against Levine and Carmel)**

42. Colony Capital LLC realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 of this Amended Complaint as if fully set forth herein.

43. As directors of PsyBio, Levine and Carmel owed fiduciary duties of care and loyalty, honesty and good faith to PsyBio and its shareholders, including Colony Capital LLC. At all relevant times, Colony Capital LLC was a shareholder at the time of the transactions complained of herein and remains a shareholder of PsyBio.

44. As directors, Levine and Carmel were required to act in the best interests of PsyBio and its shareholders and were prohibited from acting in their own self-interest to the detriment of PsyBio and its shareholders, including Colony Capital LLC.

45. Because Levine and Carmel were either directly interested in or had a conflict of interest with respect to the improper dilution of Colony Capital LLC's interests, their action vis-à-vis dissolving the company, then rescinding the dissolution, but removing Corbin from his positions as officer and director while at the same time establishing a new, competing entity, were knowing and deliberate breaches of their fiduciary duties. Levine and Carmel were acting in their own self-interest and were not acting in good faith or in the interests of PsyBio or the other shareholders.

46. Demand by Colony Capital LLC that the board rescind the wrongful conduct or bring claims against Levine and Carmel would have been futile because neither Carmel nor Levine were disinterested.

47. If, as suspected, revenue realized through investment in and/or monetization of the business were diverted to Defendants' new venture, neither Levine nor Carmel attempted to obtain approval from any disinterested director or shareholder.

48. As a direct and proximate result of Levine and Carmel breaching their fiduciary duties by purporting to dissolve PsyBio, then reviving PsyBio, diluting Corbin's interests, terminating Corbin as an officer, removing Corbin as a director and diverting PsyBio's revenues,

13

including investor capital, to a new competing entity, PsyBio was hugely devalued, with the losses resulting from that devaluation shouldered by the shareholders, including Colony Capital LLC.

49. Carmel, Levine, Nathan and Carmel, Milazzo & Feil have benefitted by knowingly receiving the benefits of Carmel and Levine's breaches of fiduciary duties, either by increased equity in PsyBio or as shareholders of the competing entity established by Levine and Carmel.

50. This derivative action is not a collusive one to confer jurisdiction that the Court would otherwise lack. Any effort by Colony Capital LLC to obtain the desired action from Carmel and Levine would have been futile as neither Levine nor Carmel are disinterested and were, at all times, acting in their self-interests.

WHEREFORE, Colony Capital LLC, derivatively on behalf of PsyBio, requests judgment in PsyBio's favor and against Levine and Carmel for actual damages in an amount in excess of $75,000 to be determined at trial, plus punitive damages in an amount to be determined at trial, plus interest, costs of suit and such other relief as the Court deems just and proper.

## COUNT II

**(Conspiracy to Breach Fiduciary Duty on Behalf of Colony Capital LLC, derivatively, against Levine, Carmel, Carmel, Milazzo & Feil, and Nathan)**

51. Colony Capital LLC realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 of this Amended Complaint as if fully set forth herein.

52. There was a meeting of the minds between and among the Defendants to commit the wrongful acts against Corbin described herein.

53. Defendants took action in furtherance of their conspiracy by unlawfully removing Corbin as an officer and director, and by improperly diluting Corbin's ownership interest in

14

PsyBio or diverting assets and corporate opportunities to a competing entity, as described herein.

54. Carmel, Levine, Nathan and Carmel, Milazzo & Feil have benefitted by knowingly receiving the benefits of Carmel and Levine's breaches of fiduciary duties, either by increased equity in PsyBio, control over PsyBio, or as shareholders of the competing entity established by Levine and Carmel.

55. Demand by Colony Capital LLC that the board rescind the wrongful conduct or bring claims against Defendants herein would have been futile, because neither Carmel nor Levine were disinterested and were, at all times, acting in their self-interests.

56. This derivative action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

57. The shareholders of PsyBio, including Colony Capital LLC, have been damaged as a direct and proximate cause of Defendants' conduct.

WHEREFORE, Colony Capital LLC, derivatively on behalf of PsyBio, requests judgment in PsyBio's favor and against Levine, Carmel, Carmel, Milazzo & Feil, and Nathan, for actual damages in an amount in excess of $75,000 to be determined at trial, plus punitive damages in an amount to be determined at trial, plus interest, costs of suit and such other relief as the Court deems just and proper.

Respectfully submitted,

**COLONY CAPITAL LLC**

By:    /s/ Howard L. Teplinsky
      One of His Attorneys

Howard L. Teplinsky – 6197501
Katherine A. Grosh – 6277577
Roenan Patt – 6309884
LEVIN GINSBURG
180 N. LaSalle Street, Suite 3200
Chicago, IL 60601
Tel: 312-368-0100
Fax: 312-368-0111
hteplinsky@lgattorneys.com
kgrosh@lgattorneys.com
rpatt@lgattorneys.com

## **VERIFICATION**

I, Richard Corbin, manager and member of Colony Capital LLC, affirm under penalties of perjury that the statements contained in the foregoing Amended Complaint are true and correct and as to such allegations made on information and belief, Corbin states that the verily believes them to be true.

                                    COLONY CAPITAL LLC

                                    _____/s/ Richard Corbin_____
                                    By Its: Manager and Member